May it please the Court, Davina Chen on behalf of Cheryl Little Dog. I'd like to try to reserve two minutes for rebuttal. Ms. Little Dog raises three sets of issues on appeal, the denial of her motion to suppress, trial issues as to the sufficiency of the first count and the instructions as to both counts, and the Federal Public Defender's conflict of interest in representing both Ms. Little Dog and Mr. Gallardo. Unless the Court prefers that I begin elsewhere, I'd like to focus today on the search. I'd make sure you do spend some time on the Sixth Amendment issue, but go ahead and start with the search. If law enforcement officers want to arrest a suspect in a private residence, the Fourth Amendment requires they obtain a warrant. If the suspect is, if it's their house, then an arrest warrant will do. But when they want to enter the home of a third party, they must obtain a search warrant. And this additional requirement safeguards an individual's privacy interests in their own home, which is at the core of the Fourth Amendment. Here, despite well-established principles, the officers who came to Ms. Little Dog's home did not have a search warrant. They threatened to kick her door in if she didn't come to the door. And when she did open the door, they walked in without asking for or waiting for permission. This entry was unconstitutional as a matter of law, and every search that followed is a fruit of the poisonous tree. The government argues that the searchers were legal because they fell within the consent exception to the warrant requirement. But for the government to prevail, they must prove three things as to each search. The consent must be clear and unequivocal. It must be voluntary and freely given, not coerced. And it must not be the fruit of a Fourth Amendment violation, the prior entry. And I would submit the government can't meet its burden as to any of these three requirements, but the clearest obstacle for them is the fruit of the poisonous tree. As I noted, the officer's initial entry was unconstitutional as a matter of law. The government argues otherwise, saying that she impliedly consented to them coming in her door. But I — it's based on nothing. She didn't say they could come in. She did nothing to indicate that they come in. They didn't even ask that they could come in. Instead, they just threatened to kick her door in. If the entry was legal, the government bears the burden of dissipating the taint, and they haven't even tried to do that. At trial or at the suppression hearing, the judge asked specifically, if the first consent was coerced, wouldn't that taint the second consent? And the government's response was, no, they're two separate searches. That's inaccurate as a matter of law. It's not true that if you have unconstitutional conduct and the officers leave and come back seven minutes later, that the first unconstitutional conduct is completely erased. And even on appeal, they point to nothing to show dissipation of the taint. Counsel, actually, don't they argue, at least from what I read, don't they argue that she impliedly consented by opening the door and moving back out of their way to allow them into the living room? They sort of argue that because what they do is they point to some cases that say moving out of the doorway shows consent. But in this case, the record is very clear that for her to open the door, she needed to move out of the doorway. So she could not even open the door without moving out of the doorway because she's in a wheelchair and she needs to wheel back. And both witnesses testified to that, and the judge also found that. And as soon as she opened the door, the testimony is quite clear. The government asked Deputy Bryce, did she invite you in? And his response was, when she opened the door, I walked in. So he didn't even testify that he was invited in. So the only thing the government bases its argument in is the fact that she backed up into the doorway. But again, in all the cases it cites, this Court has said if an individual backs up because they can't, even though they could continue the conversation at the door, that could be consent. But in a case like this, where she had to back up in order to open the inward facing door, no court has ever held that that would be consent. Furthermore, none of the cases the government cites involve officers saying if you don't come to the door, I'm going to kick it in. This is like the platonic ideal of threatening illegal conduct. So every case that they rely on, there may or may not have been a request for entry. This, there was absolutely not a request for entry. It was if you don't come to the door, I'm going to kick it in. And that's what distinguishes this case from every case the government cites. Real quick on the suppression issue. There were two charges in this case. There was the harboring and there was the false statement. Yes. How would the, if we were to agree with you on the search issue, how would that help on the false statement? I think it would help on the false statement quite clearly because there are two bases on which the jury could have convicted. One was that she knew he was in the house when she said she didn't know where he was. And the other was that he left Wednesday when there was a video camera in Walmart showing that they were together on Wednesday. I find it hard to believe, well, it would clearly affect a jury if they didn't know that he was in the house and all they had was that there was this Walmart video. There was so much question at trial as to which day was Wednesday and when was Friday and when was Tuesday. She didn't say that she had, he had never been with her. She was very open that he had been with her, that she had been taking him into town and to ceremonies, but that she, he had left on Wednesday. So I think it would affect both counts very clearly. Well, let me jump in. I may need to give you a little bit of time because I think the Sixth Amendment question, at least for me, is troubling in this case as to what happened. So I just want to make sure I understand the facts correctly. The federal defenders did represent Gallardo for, maybe it was a brief point in time, but there was a point in time they did represent him, correct? That's correct. And according to your client, and she put this in a letter I think to the court, she went to federal defenders and they said on more than one occasion, federal defenders said, we can't represent you because of a conflict. Yes, three times. And my understanding is that that was never resolved in any way by the district court. That's correct. So if we were to agree with you that something's going on here that doesn't feel quite right, and your client's not in custody now, is that correct? No, she received probation. Okay. So if we were to send this case back to the district court to try to look into this and try to figure out what the heck happened here on this issue, as I understand it, which has never really been done in this case, is that right? Correct, Your Honor. Then if we were to do that and send it back, I take it, obviously you want to win all the arguments you're trying to win. You're always very good at being a zealous advocate. But if we were to send it back on Sixth Amendment grounds, could we then take assuming that is not resolved in your client's favor, I assume then we could look at the rest of this case. I would think that you would want to address both the search issue and the search issue. But both of those could take, could make this case go away. But I guess if we're looking at those questions, we're all, we're looking at those questions through the lens of a possibly compromised counsel, right? That's true. Not you. Not you, obviously. I'm talking about the previous counsel. Right. But in terms of sufficiency, it seems to me it doesn't, it really doesn't matter. If the government couldn't put on sufficient evidence, they can't retry her for that count regardless. And then in terms of the search, if this Court were to resolve it in her favor, the case would probably go away. Of course, if the Court is not inclined to resolve the search issue in her favor, you could just go straight to the Sixth Amendment. Right. Or it might be that, you know, baby steps first, that I always think if there's a problem with counsel, that's kind of a root, a root issue. And other problems may flow from that, I guess is what I'm asking. But I just want to make sure that I understood the lay of the land and the state of the record at this point. So there's been nothing, no discussion at all in the district court about why this was okay. Right. And under Holloway, that would require automatic reversal. Good morning. May it please the Court. My name is Brian Dakin. I represent the United States. I'd like to first start by touching on the suppression issue and then going to the Sixth Amendment issue that the Court has addressed here. The government's perspective, the district court properly denied Ms. Little Dog's motion to suppress in the first instance. And I think that it's important when we're considering the suppression component of this case to look at what it was the district court did in this case. The district court conducted a hearing. The district court requested supplemental briefing. And the district court then drafted a 12-page order addressing the suppression issue in this case. Now, what Ms. Little Dog has done in this argument is recast her initial suppression issue to say that this wasn't a consent-to-search issue on its own. It's a consent-to-entry issue, and that wasn't clearly addressed by the district court. But I think that that misreads what the record truly indicates and what the district court did in this situation. And the reason that that's important is because the district court first, at page 2 of its order, and I think that this is important wording for the Court, so I'm going to read just a quick portion of it. And it says, Quote, The testimony presented at the hearing raised some concerns whether the presence of multiple officers with guns drawn at Little Dog's house caused Little Dog to feel compelled to consent to two separate searches of her house. A careful review of the testimony presented at the hearing, however, indicates that Little Dog has failed to rebut the testimony from Bryce and Zahachewski to show she voluntarily consented to the two searches. The district court then goes on, if you're looking at page 16 of the record. At page 16, it addresses specifically the multiple officers who are present, the presence of guns, and what's been classified as the threat to kick in the door. The district court even found that if this were the sole factor alone that the court were looking at, this would probably go to involuntary consent. But as the district court found there were additional factors to look at, additional facts that had to be considered, because of the fact of the totality of the circumstances analysis from the Schnekeloff v. Bustamante case, that's what's required in these sorts of things. And so to say that the district court was just solely focused on what happened inside of the house is just a misread of the record, quite frankly. The district court goes on under its analysis at page 18 of the record and says specifically Ms. Little Dog was cooperative during both the first and the second searches, said that she was helpful, and she did not appear afraid at any point. The district court even noted at page 18 of the record and said there is an inherently coercive, even acknowledging an inherently coercive component from the circumstances, the district court remained convinced, was the words that Judge Morris used in this case, that Ms. Little Dog had consented to these searches. Now, from the government's perspective, not only was this considered, but then if you look at what the argument was that Ms. Little Dog was raising during that consent-to-search issue, during the suppression component, the district court defined that as a, quote, series of unreasonable actions by law enforcement. They were looking at more. They were looking at more than just what was happening inside of the house. And the reason that that's important is because if you look at what happened with the actual consent that was given here, it was inside of the living room of Ms. Little Dog's house, it was with an officer who was sitting next to her who at that point did not have his taser out anymore, it was an officer who knows her, has known her for a number of years, as indicated at page 155, 153, and 164 of the case, and knows who she is. And so if you're just looking at and isolating that component of the search or of the consent alone, that's certainly, as the district court found, when she says, he's not here, you can go look, the district court even said during argument at page 189, that that is clearly consent in this situation. But what Ms. Little Dog was concerned with was everything else that went into this search. It was the fact of how the officers came to the door, it was the knocking, it was the multiple officers that were present. That was the issue as far as the search was concerned. Now, jumping to the Sixth Amendment issue, Your Honors, this is a situation, quite frankly, from the government's perspective, that this is not something that is right for appeal or right for this Court to address on appeal. And as Judge Owens has already alluded to, whether or not this would be proper to go back to the district court for findings, from the government's perspective, the and this should be reserved for a post-conviction procedure. So the post-conviction procedure is what Ms. Little Dog's proper course of remedy in this situation is. The Holloway case is not on point in this case. We addressed this in our brief. Counsel, can I ask you to address a preliminary matter? Certainly, Your Honor. As I understand the record, and correct me if I'm wrong, the district court was, there was a filing that informed the district court judge that the public defender's office had three times already said they couldn't represent her due to a conflict. And she brought this to the court's attention. And the court failed to make any inquiry whatsoever. And if that's the case, isn't that error by the court? No, Your Honor. And the reason is because it's not a situation as was in Holloway. The Holloway case that's cited for the automatic reversal that needs to go back is a situation where co-defendants were represented by the same counsel. The district court failed to address it and it resulted in an automatic reversal. That is not the situation that this Court faces. It faces Ms. Little Dog, who was facing charges of harboring a fugitive in false statements, versus Mr. Gallardo, who was facing charges in South Dakota on abusive sexual contact of a minor. They're not a situation of co-defendants here. So that's why, Your Honor, automatic reversal is not the proper course. Instead, the proper course is for this Court to allow it to proceed under a post-conviction relief procedure where Ms. Little Dog would, of course, waive the attorney-client privilege and proper discovery could be done in this type of a case. And, Counsel, I understand in the ineffective assistance of counsel, we always, or not always, but almost always do that in post-conviction. But normally conflicts like this, you want to root out at the district court level and that just simply wasn't done here. So why not just send it back so we actually have some idea as to what's going on? I mean, normally, you look at our Sixth Amendment cases, they're almost always on direct appeal. They're not on collateral review when it comes to conflicts. Yes, Your Honor, and I totally agree. And I think that the Court's reading of what typically happens in conflict issues is that they are addressed at the district court level. However, in this situation, even though Ms. Little Dog did raise this fact in July of 2016 regarding a potential conflict issue, if you look at the record in August of 2016 when Ms. Little Dog was represented by Mr. Gallagher at the motion to withdraw her guilty plea, this isn't something that is addressed. And so the government and maybe even the Court in that instance was left to guess, was this something that was already resolved? Was it something that was waived? And we're not at that stage. And so, yes, the district court did not make an inquiry on it at that point. But what should happen instead of unwinding the entire thing to see about a conflict issue is to allow Ms. Little Dog to go for a post-conviction relief on this exact issue, Your Honor. But I guess I'm just puzzled as to why she should have to wait that long. I mean, 2255s are more arduous to do than if there's no right to counsel for there is right to counsel now. Everyone's going to get a better product if we send it back now than if we wait and see if she manages to hire a lawyer. And she had all kinds of issues with lawyers in this case, reading the record. So I guess how would the government be prejudiced if we were to send it back now for a Sixth Amendment analysis by the district court as opposed to by way of collateral review? And the way that I would say, Your Honor, is because of the fact that this would take the proper procedure out of place. And the proper procedure would be for this to be a collateral appeal. But to answer the question directly, Your Honor, I can't see a prejudice to the government in that sort of a situation, no. Unless there are further questions, Your Honor. Yes, Your Honor. This is on another subject, but the United States didn't prove that this was a felony warrant. Yes, Your Honor. And I believe that what the argument is that the word felony did not appear at trial. And the jury instruction. Your Honor, I can say that it was instruction number four, which goes to the elements of, I'm sorry, the indictment language of what harboring is. And as trial counsel, I can tell you the word felony never came up in trial. It didn't appear on the face of any of the documents that were presented at trial. I can tell you, though, that if we were looking at this under the Hill decision, which is the evidence viewed in the light most favorable to the government, you have an indictment, a complaint, an arrest warrant, and a wanted poster. And so all of those things describe abusive sexual contact of a minor under the age of 12. And so what this Court would have to determine is that no reasonable juror could conclude that that was a felony offense that he was being prosecuted for. And I don't think that's appropriate under this record. Your Honor, I think the Court should properly affirm the decision of the District Court regarding the suppression issue, as well as the convictions for both harboring a fugitive and false statement, and then allow this to be addressed in post-collateral proceedings. Thank you, Your Honor. Thank you, Counsel. Ms. Chen? First, very briefly on the search issue, I don't believe the government has ever argued that the issue of taint was waived. It clearly wasn't waived. It was litigated quite fiercely below and discussed specifically at ER 226 through 232 repeatedly. And so I'm not sure what the government means when they say that it's been recast on appeal. And then in terms of the care with which the District Court took, whether or not a consent is a fruit of an unlawful entry is an issue that's reviewed de novo. And so, you know, with all due respect to the District Court, he didn't actually even mention the word taint. So there would be nothing to defer to, even if it were clearly erroneous or abusive discretion, but review is de novo. With respect to the Sixth Amendment issue, under Holloway, reversal is automatic. So I would argue that it doesn't even need to go back for the District Court to address the issue. It just needs to go back for a new trial. Reversal is automatic because there was contemporaneous representation of two individuals. It was brought to the Court's attention. It was not Ms. Little Dog's job to keep bringing it to the Court's attention when she had already written a letter explaining that she had been told three times that the Federal Public Defender's Office had a conflict of interest. And then finally, with respect to the felony warrant issue, it would be utter speculation for a jury to decide this was a felony when there was absolutely no evidence of it. As I've noted in the record, there are four or five jurisdictions in which this exact crime is a misdemeanor. Roberts. Thank you, Ms. Chen. Thank you both for your argument and briefing. This matter is submitted.
judges: Wardlaw, Owens, Lefkow